IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 04-CR-1090-11 |
| Plaintiff, | ) |
| | ) Judge Joan B. Gottschall |
| v. | ) |
| | ) |
| JAMES CROSS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

James Cross is serving an 18-year sentence after pleading guilty to a count of conspiracy to possess 50 grams of crack cocaine with intent to distribute it. *See* 21 U.S.C. §§ 841(a)(1), 846 (2002 Supp.). The indictment alleged the minimum amount of crack cocaine then needed to trigger the 10-year mandatory minimum, 50 grams. *See id.* §§ 841(b)(1)(A)(iii), (b)(iii); Indictment 1, ECF No. 64. Four years after Cross was sentenced, Congress increased the amount of crack that triggers a 10-year minimum from 50 to 280 grams when it enacted the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010). *Dorsey v. United States*, 567 U.S. 260, 269 (2012). But the Fair Sentencing Act's changes to drug amounts triggering mandatory minimum sentences were not retroactive for defendants, like Cross, sentenced before the First Step Act's effective date of August 3, 2010. *United States v. Foster*, 706 F.3d 887, 888 (7th Cir. 2013).

Cross moves for a sentence reduction under Section 404 of the First Step Act of 2018 ("First Step Act"), Pub L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Broadly speaking, the First Step Act made the Fair Sentencing Act's reductions of mandatory minimums for certain crack-related offenses retroactive. The government contends that Cross is ineligible for a

1

sentence reduction because he admitted in his plea agreement, and the court found at sentencing, that his offense involved more than 1.5 kilograms of crack.[1] *See* Plea Agreement, ECF No. 171. For the following reasons, the court grants Cross' motion.

## **Eligibility**

Section 3852 of Title 18 of the United States Code specifies the limited circumstances in which the court may modify a sentence. The operative provision here,[2] § 3582(c)(1)(B), permits a sentence modification "to the extent otherwise expressly permitted by statute." The statute here is § 404(b) of the First Step Act, which reads "[a] court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010[,] were in effect at the time the covered offense was committed." 132 Stat. 5194 (internal citation omitted). The previous subsection defines the term "covered offense" under § 404. The phrase means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010[,] that was committed before August 3, 2010," the date the Fair Sentencing Act took effect.[3] *Id.* § 404(a).

---

[1] Cross signed a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Once a court accepts a Rule 11(c)(1)(C) plea agreement, as was done here, the sentence, or as in this case the sentencing range recommended, binds the court. *Freeman v. United States*, 564 U.S. 522, 527 (2011). *See also* Plea Agreement 14–18 (agreed guidelines calculations). Cross and the government's briefs set forth the relevant sentencing guidelines calculations, including the downward departure requested and approved at sentencing. *See* Plea Agreement 21–23. As the relevant calculations are not in dispute, they have not been reproduced here.

[2] A separate provision, § 3582(c)(2), applies to changes to the sentencing guidelines. *See* 18 U.S.C. § 3582(c)(2) (permitting a court to reduce the prison term of "a defendant who has been sentenced to a term of imprisonment based on a [guidelines] sentencing range that has subsequently been lowered by the Commission"). Section 404 of the First Step Act did not alter the sentencing guidelines, so § 3582(c)(2) is not at issue here.

[3] Defendants who have already benefited from §§ 2 and 3 of the Fair Sentencing Act cannot obtain relief under § 404 of the First Step Act. *See* First Step Act § 404(c).

2

The government emphasizes the words "violation" and "committed" in the definition of covered offense. Those words, the government says, show that Congress wanted courts to consider "actual conduct" involved in the offense rather than the conduct charged in the indictment to determine whether a defendant is eligible for a sentence reduction. Gov't Resp. 5, ECF No. 440. In practical terms, the government wants the court to pierce the amount of drugs charged in the indictment and look to the entire record to determine the drug quantity under § 404. Here, the 1.5 kilograms Cross admitted in his plea agreement (and found at sentencing) would dictate Cross' eligibility under the government's approach. *See* Presentence Investigation Report ("PSR") 4–5; Sentencing Tr. 11– 12, ECF No. 433 (adopting the PSR's findings). Because the amount of crack found at Cross' sentencing exceeds the 280 grams needed to trigger a 10-year mandatory minimum after the Fair Sentencing Act, the government submits that Cross is ineligible for a sentence reduction.

No court of appeals has ruled on how to determine eligibility under § 404 of the First Step Act. As far as this court's research can determine, every judge in this district who has ruled on the issue has rejected the government's position. *United States v. Wright*, 2019 WL 3231383, at *3 (N.D. Ill. July 18, 2019) (Castillo, J.); *United States v. Johnson*, 2019 WL 2590951, at *3 (N.D. Ill. June 24, 2019) (Leinenweber, J.); *United States v. Booker*, 2019 WL 2544247, at *2 (N.D. Ill. June 20, 2019) (Lefkow, J.). Some district courts have reached the contrary conclusion, but "the weight of authorities" hold that "in determining whether a defendant is eligible for relief under § 404 of the First Step Act, the sentencing court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010," and not to the conduct of the defendant. *Wright*, 2019 WL 3231383, at *3 (collecting cases); *accord Johnson*, 2019 WL 2590951, at *2.

This court finds the weight of authority persuasive and adopts the reasoning of cases holding that eligibility under § 404(b) of the First Step Act is determined with reference to the offense charged. As several cases have explained, the government's approach "effectively requires the Court to employ a prosecutor-friendly 'way-back machine' to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect." *United States v. Pierre*, 372 F. Supp. 3d 17, 22–23 (D. R.I. 2019) (quoted in *Wright* and *Johnson*). A case relied on by the government illustrates the difficulties involved. In *United States v. Blocker*, 378 F. Supp. 3d 1125, 1129 ( N.D. Fla. 2019), the court hypothesized that if the defendant had been charged today, the indictment would state the post-Fair Sentencing Act mandatory minimum threshold of 280 months. Only a grand jury can find probable cause to support an indictment charging a felony. *See* Fed. R. Crim. P. 7(c)(1), 6(f). Why should the court assume that a hypothetical grand jury in 2005 would have found probable cause for the increased amount of crack? The government points to Cross' plea agreement, his PSR, and the sentencing transcript. These are the fruits of the original indictment, however. The government identifies no evidence then in existence that would have supported an indictment for at least 280 grams of crack. Congress did not intend courts to undertake such an inquiry.

The government contends that the courts that have ruled against it have ignored § 404's plain language and two Supreme Court cases discussed below. It attaches great significance to Congress' use of the words "violation" and "committed" in § 404's definition of a "covered offense." First Step Act § 404(a). The government submits that if Congress wanted to limit eligibility to the offense as charged in the indictment, it would have used the word "conviction" in the definition of charge offense. Gov't Resp. 5–7.

Rather than settling the meaning of the words "violation" and "committed," the cases the government cites underscore their ambiguity. The Supreme Court and the Seventh Circuit have recognized that the word "violation" can be ambiguous. *See Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 413 (1977) ("The District Court's use of the phrase 'cumulative violation' is unfortunately not free from ambiguity."); *United States v. Midwest Generation, LLC*, 720 F.3d 644, 646 (7th Cir. 2013) ("The phrase 'continuing violation' is ambiguous.").

The two Supreme Court cases the government cites confirm this. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), the Court held that the word "violation" in terms of the RICO statute "refers only to a failure to adhere to legal requirements."[4] The Court did not declare this to be the plain meaning of the word "violation," however. *See id.* Instead, it analyzed the RICO statute's structure and text to construe the term. *See id.* The word "violation" was not used in the statute interpreted in the second case the government cites. Instead, the Court interpreted the definition of a "misdemeanor crime of domestic violence" used in 18 U.S.C. § 922(g)(9) and defined in § 921(a)(33)(A). *See United States v. Hayes*, 555 U.S. 415, 418, 426 (2009). *Hayes* holds that the court is not bound by the statutory elements of the predicate offense, but, as in *Sedima*, the Court's thorough analysis of the federal statute's text, structure, and drafting history cuts against the government by undermining the notion that the language Congress used was clear cut. *See id.* at 426–29 (acknowledging that the statute is "not a model of the careful drafter's art"). If anything, both cases illustrate the importance of context when construing words such as "violation" and "committed."

---

[4] The RICO provision at issue creates a private right to bring a civil suit: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). A lower court read this language as requiring a criminal conviction before a civil suit could be brought.

In criminal cases, the term "violation" has been interpreted to mean the offense formally charged, even if other facts in the record suggest that enhanced penalties could have been sought. The Seventh Circuit has used the word violation in this sense when referring to "an indictment or information alleging a § 841(a) violation." *United States v. Padilla*, 23 F.3d 1220, 1224 (7th Cir. 1994) (discussing plea colloquy). Indeed, the phrase "fish and game violation" used in a portion of the sentencing guidelines has been interpreted to refer to the offense of which the defendant was actually convicted. *See United States v. Easterly*, 95 F.3d 535, 536 (7th Cir. 1996). Given the different senses in which the word "violation" can be used, the terms must be analyzed in the context of the words surrounding it. The canon of statutory interpretation commonly called by its Latin name "noscitur a sociis," teaches that "a word is known by the company it keeps." *McDonnell v. United States*, 136 S. Ct. 2355, 2368 (2016) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). This canon "is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Id.* (quoting same source).

When read in context, the language of § 404 favors Cross' reading. Again, the definition "covered offense" is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." First Step Act § 404(a). The use of the phrase "statutory penalties" and the reference to §§ 2 and 3 of the Fair Sentencing Act drive home the point that the statutory offense at conviction, not facts found at a later stage such as sentencing, controls § 404 eligibility. The First Step Act cross-references § 2 and § 3 of the Fair Sentencing Act. §§ 404(a), (b). Those sections changed statutory minimums, not the guidelines. *See* 124 Stat. 2372. A separate section of the Fair Sentencing Act authorized the Sentencing Commission to promulgate new guidelines conforming to the statutory changes

made in §§ 2 and 3. *Dorsey*, 567 U.S. at 269 (citing Fair Sentencing Act § 8(1)). As a whole, then, § 404 keeps the focus on the Fair Sentencing Act's statutory changes, scrupulously avoiding references that might bring into play the sometimes elaborate fact finding process under the sentencing guidelines.[5] *See generally* U.S.S.G. § 1B1.3. Seen in this context, the meaning of the term "violation" becomes clear. It similarly eschews a deep dive into the facts underlying the defendant's conviction in favor of a straightforward analysis of whether § 2 or § 3 of the Fair Sentencing Act lowered the mandatory minimum for the offense of which the defendant was convicted.

Pivoting to a policy argument, the government maintains that reading § 404 of the First Step Act this way will create unwarranted, and unintended, disparities between defendants charged before and after the enactment of the Fair Sentencing Act. *See* Gov't Resp. 8–10. This argument rests ultimately on the notion that prosecutors had "no reason" to indict defendants on amounts greater than the 5 and 50 grams that triggered pre-Fair Sentencing Act mandatory minimums. *Id.* at 9. But again, the court has no reason to assume that any defendant could have been indicted on a greater drug quantity. Also, nothing mandates a sentence reduction under § 404 for defendants found to have trafficked in large drug quantities. Arguments about avoiding unwarranted disparities remain available to the government to oppose a sentence reduction as a matter of the court's discretion. *See* 18 U.S.C. § 3553(a)(6).

Ultimately, however, the eligibility question here is statutory. "The issue before the Court is whether [Cross] is eligible for relief under the First Step Act, not whether his eligibility differs from other defendants. The Court will not disregard [Cross'] eligibility based on an

---

[5] As further contextual support, the First Step Act directs the court to impose a modified sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." 132 Stat. 5194 (internal citation omitted).

7

argument that other defendants might be subject to longer statutory minimum sentences." *Wright*, 2019 WL 3231383, at *3.

The construction of § 404 of the First Step Act adopted today has an additional virtue: it avoids a constitutional question. The government raises, and dismisses, the possibility that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), apply to defendants seeking a § 404 sentence reduction. *See* Gov't Resp. 9–15. Together, these cases stand for the proposition that any fact that increases the statutorily prescribed mandatory minimum sentence must be submitted to and proven to a jury beyond a reasonable doubt. *Alleyne*, 570 U.S. at 103. The drug quantity findings that the government relies on to preclude Cross from First Step Act eligibility were never submitted to a jury. This presents no constitutional problem, says the government, because *Alleyne* does not apply retroactively to First Step Act defendants. The question seems to the court to be far from straightforward, and construing § 404 of the First Step Act as the court does today has the virtue of avoiding it. *See, e.g., Warger v. Shauers*, 135 S. Ct. 521, 529 (2014) (discussing the canon of constitutional avoidance).

### **Discretion to Reduce Sentence**

Having found that Cross is eligible for a sentence reduction under § 404 of the First Step Act, the court turns to whether it should exercise its discretion to reduce his sentence. The government does not oppose a reduction if Cross is found eligible. It "agrees that this Court should exercise its discretion to resentence Cross using the framework applied at his original sentencing." Gov't Resp. 21. The parties concur that after all applicable guidelines adjustments and a departure consistent with the plea agreement, the low end of Cross' advisory guidelines range is 175 months, and Cross and the government join in urging the court to impose a 175-

month sentence. *Id.* After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the court adopts this recommendation, adding that it has reviewed the mitigating evidence attached to Cross' reply and that this evidence further supports a sentence reduction.

Cross represents that he has served approximately 152 months of his sentence. Mot. 4, ECF No. 437. He requests a sentence of time served, calculating that his sentence is the equivalent of 179 months with good time credits. *Id.* The government is not so sure. It prefers a determinate sentence of 175 months with a recommendation to the U.S. Bureau of Prisons to recalculate immediately Cross' good time credits. Cross has a very modest disciplinary history in prison, but the record is insufficient for the court to confirm that he is eligible for immediate release. The amended judgment will therefore reflect a determinate sentence of 175 months and a recommendation that Cross' good time credits be immediately recalculated.

\* \* \*

For the reasons stated, Cross' motion for relief under § 404 of the First Step Act (ECF No. 437) is granted. Amended judgment will be entered immediately in accordance with this order.

Date: August 7, 2019

/s/
Joan B. Gottschall
United States District Judge